UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| JESSICA GLENNA ARNETT JONES, <br>     Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Acting Commissioner of Social Security, <br>     Defendant. | CIVIL ACTION NO. 6:19-145-KKC <br><br><br> **ORDER AND OPINION** |

*** *** ***

This matter is before the Court on cross-motions for summary judgment. (DE 11, DE 13.) The claimant, Jessica Glenna Arnett Jones, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for Disability Insurance Benefits under Title II and Supplemental Security Income under Title XVI. The Court, having reviewed the record, will affirm the Commissioner's decision because it is supported by substantial evidence and was decided by the proper legal standards. Accordingly, the Commissioner's motion for summary judgment (DE 13) is **GRANTED**, and Jones' motion for summary judgment (DE 11) is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In the present case, Jones filed an initial claim for disability on June 3, 2015 alleging an onset date of February 1, 2011. (Administrative Record "AR" at 312-18.) After being denied initially and upon reconsideration, Jones filed a request for a hearing before an administrative law judge ("ALJ"). (AR at 195-96.) On April 26, 2018, the ALJ rendered an unfavorable decision, and Jones filed an appeal with the Appeals Council. (AR at 25.) On

1

May 1, 2019, the Appeals Council rendered an unfavorable decision. (AR at 5.) Thereafter, Jones filed the present action.

This Court's review of the ALJ's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009). In denying Jones' claim, the ALJ engaged in a five-step sequential process set forth in the regulations under the Social Security Act. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Jones has not engaged in substantial gainful activity since February 1, 2011, the alleged onset date. (AR at 15.)

At step two, the ALJ determined that Jones has the following severe impairments: history of seizures, an anxiety disorder, and an affective disorder. (AR at 15-16.) The ALJ also considered Jones' (1) mild lumbar degenerative changes; (2) cervical degenerative changes; (3) history of fibromyalgia; (4) hearing loss; (5) status post stroke; (6) vision loss; (7) poor coordination; and (8) obesity and found that such impairments were not severe based on subjective reporting, exam findings, serological testing, imaging studies, and corresponding conservative—or lack of sustained—treatment. (AR at 16.)

At step three, the ALJ found that Jones does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 18.)

Before proceeding to step four, the ALJ determined that Jones has the residual functional capacity ("RFC") to perform a full range of medium exertional work, except she cannot climb ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs; she should avoid any exposure to unprotected heights, dangerous moving machinery, and operation of a motor vehicle at work; she can understand and remember simple instructions; she can sustain

attention and concentration to complete simple tasks with regular breaks every 2 hours; she can occasionally interact with supervisors and coworkers, but never with the public; and she can adapt to routine work conditions and occasional workplace changes that are gradually introduced. (AR at 19.) The ALJ found that Jones' medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, he found that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence. (AR at 20.)

At step four, the ALJ found that Jones is unable to perform any past relevant work. (AR at 23.)

At step five, the ALJ found that there were jobs in the national economy that Jones could perform. (AR at 24). The ALJ considered Jones' RFC, age, education, and work experience in determining that she is not disabled.

Jones now challenges the ALJ's decision by asserting that it ignored certain compelling evidence and was not supported by substantial evidence. (DE 11-1.) Jones essentially[1] argues that the ALJ erred in determining her RFC and her disability status because he overemphasized her daily activities and failed to properly consider the impact of her history of domestic violence, the severity of her anxiety and depression, her allegations of pain, and that lack of medical treatment is due to her severe mental impairment and fear of her abusers. (*See* DE 11.) Jones also states that the ALJ did not have the opportunity to consider additional testimony of abuse caused by her now deceased husband. She states that she was unable to testify to this abuse at the time of the hearing because she was fearful of her husband, who was alive at the time of the hearing. (DE 11-1 at 11.)

---

[1] Jones breaks her summary judgment motion into seven arguments. (DE 11.) However, considering the Court's limited ability to review the ALJ's decision, the Court considers her arguments collectively as a challenge to the ALJ's RFC determination and ultimate finding of nondisability.

3

After reviewing the parties' summary judgment motions, the Court finds that the ALJ's RFC and disability determinations were supported by substantial evidence. Additionally, the Court finds that the additional evidence presented does not warrant a sentence-six remand. Accordingly, the Court grants the Commissioner's motion for summary judgment.

## II. ANALYSIS

### A. Legal standard.

The Court's review of the Commissioner's decision is limited to an inquiry as to whether the decision was supported by substantial evidence and decided by proper legal standards. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). When an ALJ's decision is based on substantial evidence, it is not subject to reversal even if substantial evidence would have supported the opposite conclusion. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).

### B. Substantial evidence supported the ALJ's decision.

There is substantial evidence supporting the ALJ's determination that Jones could perform medium work, with certain limitations, and was not disabled. The ALJ reasonably interpreted the evidence before him, and his conclusions were adequately supported. Accordingly, there is no basis for rejecting the ALJ's findings, and the Commissioner's decision must stand.

ALJs use a two-part analysis in evaluating complaints of disabling symptoms: (1) the ALJ will determine whether there is an underlying, medically determinable, physical impairment or mental impairment that could reasonably be expected to produce the claimant's symptoms; and (2) if the ALJ finds that such an impairment exists, he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work

activities. 20 C.F.R. § 404.1529; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). In evaluating a claimant's severity of symptoms, relevant factors include: (i) the individual's daily activities; (ii) the location, duration, frequency, and intensity of the pain; (iii) factors that precipitate and aggravate symptoms; (iv) the type, dosage, effectiveness, and side effects of medication; (v) the treatment the individual receives or has received for relief; (vi) any other measures the individual has used to relieve pain; and (vii) any other factors concerning the individual's functional limitations. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints based on a consideration of the entire case record," including medical signs and laboratory findings, the claimant's own complaints of symptoms, any information provided by treating physicians and others, statements by persons familiar with how the claimant's symptoms may affect her daily life, and any other relevant evidence contained in the record. *Rogers*, 486 F.3d at 247; 20 C.F.R. § 404.1529(c)(4). An ALJ is required to evaluate the claimant's symptoms and diminish her capacity for basic work activities to the extent that her alleged functional limitations and restrictions due to her symptoms can reasonably be accepted as consistent with the objective medical and other evidence. 20 C.F.R. § 404.1529. Courts generally must defer to an ALJ's credibility determination because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Duncan v. Secretary of HHS*, 801 F.2d 847, 852 (6th Cir.1986) (quoting *Kirk v. Secretary of HHS*, 667 F.2d 524, 535 (6th Cir.1981), *cert. denied*, 461 U.S. 957 (1983)). However, the ALJ's determination must contain specific reasons for the weight given to the claimant's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the claimant and any subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Rogers*, 486 F.3d at

247-48; Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017).

The ALJ determined that Jones has the RFC to perform medium work, except she cannot climb ladders, ropes, and scaffolds; she can occasionally climb ramps and stairs; she should avoid any exposure to unprotected heights, dangerous moving machinery, and operation of a motor vehicle at work; she can understand and remember simple instructions; she can sustain attention and concentration to complete simple tasks with regular breaks every 2 hours; she can occasionally interact with supervisors and coworkers, but never with the public; and she can adapt to routine work conditions and occasional workplace changes that are gradually introduced. (AR at 19.) In determining Jones' RFC, the ALJ considered her medical history—including medical records from treating physicians, consultative physical and psychological examinations and opinions, and function reports—and testimony regarding her activities and symptoms. (AR at 83-89.) The ALJ found that Jones' medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, he found that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical and other evidence. (AR at 20.)

At the hearing, Jones alleged that she suffered from chronic seizures and "crippling emotional problems that le[ft] her unable to go anywhere or do anything beyond 'basically just exist.'" (AR at 20 (citing AR at 32-66).) Jones argues that the ALJ erred in determining her RFC because he overemphasized her daily activities and failed to properly consider the impact of her history of domestic violence, the severity of her anxiety and depression, her allegations of pain, and that lack of medical treatment is due to her severe mental impairment and fear of her abusers. (*See* DE 11.)

6

The ALJ identified significant evidence supporting that the intensity, persistence and limiting effects of Jones' symptoms were not as severe as alleged. The ALJ first considered that Jones' daily activities were inconsistent with the degree of limitation she alleged in her testimony and disability paperwork. (AR at 20-21.) Jones stated that she helped care for her "invalid" father, could perform a full range of personal care and hygiene without physical impediments, shopped in stores, counted change, paid bills, managed a bank account, used checkbooks and money orders, prepared simple meals, visited with her daughter and grandson, watched TV all day, and helped with some chores, like picking up the clothes. (*See* AR at 32-66, 373-90, 405-22.) Despite Jones' allegations that the ALJ "overemphasized her daily activities[,]" the ALJ appropriately considered her activities, *see* 20 C.F.R. § 404.1529(c)(3)(i), in conjunction with her testimony, treatment history, objective medical evidence, opinion evidence, and lay testimony. (AR at 19-23.)

The ALJ also considered Jones' mental health history in determining her RFC. The ALJ considered that Jones had a "remote and modest history of mental healthcare" with unremarkable findings and success with drug treatment. (AR at 22.) Jones' records reflect sparse treatment for mental health issues—she treated with an outpatient psychiatrist, Dr. Allahham from 2009 to 2012, with a break from treatment from December 2010 to November 2011, and she otherwise only intermittently reported mental health issues to family providers. (AR at 518-40.) Treatment notes reflect unremarkable findings, conservative drug treatment with few side effects, and stable mental health when complying with drug therapy. (*See* AR at 348-54, 393-99 490-515, 518-40, 545-678, 712-723.) Jones also had no record of psychiatric hospitalization, emergent care, crisis intervention, or changes to her conservative drug therapy. The ALJ further considered a consultative physical examiner's observations that Jones' appearance, mood, orientation, and thinking seemed appropriate and her memory for medical events was good. (AR at 700.) The ALJ also weighed the various opinion evidence

7

related to Jones' mental health—the ALJ gave preponderant weight to a mental functional evaluation finding that Jones had severe anxiety and depression with no more than moderate limitations because it was consistent with the modest treatment record, "giving [Jones] benefit of the doubt with respect to mental allegations[;]" the ALJ gave less than preponderant weight to a different mental functional evaluation that found "marked" limitation in social functioning because such finding was unsubstantiated by the modest record of conservative, remote treatment and inconsistent with Jones' reported daily activities; the ALJ gave some weight to a consultative medical examiner's report that reflected moderate limitations, but he discounted the report to the extent it reported marked restrictions in workplace socialization and adaptation because those findings were inconsistent with other exam findings and conservative therapeutic intervention; and the ALJ gave marginal weight to a remote consultative mental examination conducted in 2013 that found marked functional limitations in workplace concentration and adaptation because it was inconsistent with Jones' record of "intermittent, routine, and largely remote treatment, as well as details of [Jones'] day-to-day activities." (AR at 22-23.)

Although the ALJ did not engage in an in-depth discussion regarding Jones' history of domestic violence, the ALJ did consider Jones' testimony, in which she mentioned some history of domestic violence. (*See* AR at 19-23.) Additionally, Jones' record did not include any diagnosis of post-traumatic stress disorder, *see* 20 C.F.R. § 404.1505 (a claimant can only be disabled "by reason of [a] medically determinable physical or mental impairment"), and the ALJ appropriately considered Jones' medical history as a whole. Jones additionally argues that the ALJ improperly discounted the severity of her anxiety and depression related impairments.[2] But the ALJ found that Jones had severe anxiety and affective disorders, and

---

[2] This argument is unclear. First, Jones appears to argue that her mental impairments should have been found to be severe under step two of the evaluation. (*See* DE 11-1 at 4-5.) However, the ALJ did find that Jones had severe

8

he considered those impairments in determining her RFC. Jones' next argument, that her lack of medical treatment was due to her severe mental impairment and fear of her abusers, merely offers an alternative interpretation of the evidence, or lack thereof. Moreover, Jones' sparse treatment for mental health issues was only one of several considerations articulated by the ALJ in discounting her allegations of limitations. (*See* AR at 19-23.) Considering that the ALJ's findings were substantially supported and consistent with objective medical findings, there is no basis for rejecting them.

The ALJ also considered Jones' allegations regarding her seizures, physical abilities, and pain. (AR at 21-23.) With respect to Jones' testimony that she suffered from chronic seizures, the ALJ considered that her medical history reflected only intermittent—and entirely remote—reporting and management with prescription medication. (AR at 21.) Jones' medical history reflected that she first sought treatment for an ictal episode in August 2008, and she did not report another seizure until July 2012. (AR at 490-515, 574-657.) In September 2012, she was hospitalized for a day following a reported seizure after running out of prescribed medication. (AR at 581-82, 712.) Following this hospitalization, she accepted additional seizure medication and declined further follow-up and testing. (AR at 712.) The ALJ stated: "[i]mportantly, the only instance of clinical corroboration occurred at the ER in September 2012, when staff observed her 'confused, lethargic' post-ictal state." (AR at 21.) The ALJ also considered diagnostic testing that showed uniformly negative

---

anxiety and affective disorders, (*see* AR at 15-16), and just because a claimant has severe impairments does not compel the ALJ to find that the claimant is disabled. Jones next appears to argue that she meets a particular listing at step three, (*see* DE 11-1 at 5-6), but Jones did not argue conformity with any particular listing during prior proceedings. (*See* AR at 18.)

To the extent that Jones challenges the ALJ's step two or step three findings, the Court finds that she has waived these arguments because the arguments are severely underdeveloped, Jones does not explain why the ALJ's findings at step two or three were in error, and Jones does not otherwise support her arguments with any evidence. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'").

longitudinal intracranial imaging studies dating back to August 2008 and a consultative examination from August 2015, which reported that Jones had a full range of motion in all joints, a normal gait, ability to walk on heels and toes, and ability to squat without difficulty. This examiner further reported an unremarkable, non-focal neurology examination with no diffuse or trigger point tenderness and no apparent functional limitations. (AR at 21 (citing AR at 699-705).) The ALJ found that the record did not support the weakness or loss of balance alleged and determined the lack of reporting or required emergent care indicates seizure control with the proper use of prescribed medications. (AR at 21.) The ALJ also considered the opinion evidence related to Jones' physical abilities. (AR at 22-23.) The ALJ gave some weight to an opinion finding that Jones could perform limited work at all exertional levels. The ALJ stated: "in order to give the claimant's allegation of seizure disorder—in light of the modest record of reporting and conservative treatment—maximum plausible benefit of the doubt, she has been restricted to medium work." (AR at 22.) The ALJ also gave "partial/some weight" to a consultative physical examiner's opinion that Jones could perform work at all exertional levels. Again, the ALJ gave Jones the benefit of the doubt, finding her more restricted than the physical examiner opined based on her subjective allegations of symptoms. (AR at 22.) Finally, the ALJ considered Jones' mother's testimony regarding Jones' activities and abilities. The ALJ gave the opinion some weight as it related to Jones' activities because her mother would have some knowledge about those activities. However, the ALJ gave the opinion marginal weight as it related to Jones' abilities because Jones' mother is not a medical professional trained to make such assessments. (AR at 23.)

Although Jones argues that the ALJ did not properly consider her subjective complaints of pain, she has not identified any error in the ALJ's consideration of the evidence. Jones' subjective complaints were not supported by the objective medical evidence, so the ALJ appropriately considered Jones' testimony, activities, treatment history, medical evidence,

10

opinion evidence, and lay testimony. The ALJ's findings with respect to Jones' seizures and physical abilities were reasoned and substantially supported. Accordingly, there is no basis for rejecting the ALJ's conclusions.

The ALJ's decision adequately considered the evidence—including Jones' activities, medical history, opinion evidence, testimony, and reported symptoms—in determining that she has the RFC to perform medium work with some limitations. The Court finds that a reasonable mind might accept the foregoing evidence as adequate to support the ALJ's findings. The ALJ appropriately evaluated the relevant factors and diminished Jones' capacity for basic work activities to the extent that her alleged functional limitations and restrictions due to her symptoms can reasonably be accepted as consistent with the objective medical and other evidence. The ALJ provided specific reasons for discounting Jones' reported symptoms, and he explained why certain opinions were entitled to more weight than others. Accordingly, the ALJ's decision must stand since it was supported by substantial evidence and decided under the proper legal standards. *See Perales*, 402 U.S. at 390.

The ALJ also did not err in finding that Jones was not disabled. Based on the RFC determined by the ALJ, there were jobs in the national economy that Jones could perform. Accordingly, the ALJ appropriately concluded that Jones was not disabled.

**C. A sentence-six remand is not warranted.**

Although Jones does not directly assert that a sentence-six remand is warranted, her motion for summary judgment mentions evidence that was not included in the Administrative Record. Jones states that she suffered abuse from her now deceased husband. (DE 11-1 at 11.) She states that she was unable to testify to this abuse at the time of the hearing because she was fearful of her husband, who was alive at the time of the hearing. (DE 11-2 at 1.) In support, Jones attached pictures of scars and identified how the scar was

caused. (DE 11-2 at 3-6; DE 11-3.) Jones does not direct the Court to any other record of these injuries.

In this circuit, it is well established that the Court may not consider additional evidence in determining whether, under sentence-four, substantial evidence supports the ALJ's decision. *See*, *e.g.*, *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 487 (6th Cir. 2006). Accordingly, this Court cannot consider any additional evidence in deciding whether the ALJ's decision was supported by substantial evidence.

A district court can, however, remand a case for further administrative proceedings in light of additional evidence pursuant to sentence-six, but only where the "claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996)) (internal quotation marks omitted). Evidence is new if it was not in existence or available at the time of the administrative proceeding, and it is material "if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988). Good cause is shown by demonstrating a reasonable justification for failing to acquire and present the evidence to the ALJ. *Id.*

Jones has not asserted or otherwise demonstrated a reasonable probability that the additional evidence of domestic violence would have changed the ALJ's finding that she was not disabled. (*See* DE 11-1.) Accordingly, Jones has not demonstrated that a sentence-six remand is warranted.

### III. CONCLUSION

Based on the forgoing, the Court **HEREBY ORDERS** as follows:

(1) Jones' motion for summary judgment (DE 11) is **DENIED**.

(2) Defendant's motion for summary judgment (DE 13) is **GRANTED**.

(3) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards.

(4) A judgment will be entered contemporaneously with this order.

Dated September 01, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY